UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BERKSHIRE TELEPHONE CORPORATION, et al.,

                                    Plaintiffs,              No. 05-CV-6502 CJS

         -vs-

                                                             DECISION AND ORDER

SPRINT COMMUNICATIONS COMPANY, L.P.,
NEW YORK PUBLIC SERVICE COMMISSION,
et al.,

                                    Defendants.

_____

APPEARANCES

For plaintiff:                Jerauld E. Brydges, Esq.
                              Harter, Secrest & Emery LLP
                              1600 Bausch & Lomb Place
                              Rochester, New York 14604

                              Thomas J. Moorman, Esq.
                              Woods & Aitken LLP
                              2154 Wisconsin Avenue N.W.
                              Suite 200
                              Washington, D.C. 20037

For defendant Sprint:         Raymond A. Cardozo, Esq.
                              Reed Smith LLP
                              Two Embarcadero Center, Suite 2000
                              San Francisco, CA 94111-3922

For defendant New York
Public Service Commission:    Dawn Jablonski Ryman, Esq.
                              General Counsel
                              Diane T. Dean, Assistant Counsel
                              John C. Graham, Assistant Counsel
                              Public Service Commission of the
                              State of New York
                              Three Empire State Plaza
                              Albany, New York 12223-1350

1

INTRODUCTION

This is an action pursuant to § 252(e)(6) of the Telecommunications Act of 1996

("the Act"), 47 U.S.C. § 251 *et seq.*, in which plaintiffs seek judicial review of a decision

by the New York Public Service Commission ("PSC") pertaining to interconnection

agreements between plaintiffs and Sprint, who are competing providers of local

telephone service.  The following applications are now before the Court: 1) plaintiffs'

motion for summary judgment [#25]; 2) PSC's cross-motion for summary judgment

[#30]; and 3) Sprint's cross-motion for summary judgment [#33].  For the reasons that

follow, plaintiffs' motion is denied and defendants' motions are granted.

BACKGROUND

This action involves a dispute between plaintiffs and defendant Sprint, all of

whom are "local exchange carriers" ("LECs") within the meaning of the Act.  Such LECs

"are companies that provide local telephone service." *Global NAPs, Inc. v. Verizon New*

*England, Inc.*, 454 F.3d 91, 93 n. 1 (2d Cir. 2006).  The act "established two types of

local-exchange carriers: incumbents (or ILECs) and competitors (or CLECs). Before the

1996 Act, the ILECs held exclusive local telephone franchises. The 1996 Act, however,

preempted local laws establishing the franchises and permitted the CLECs to

interconnect their networks to that of the ILECs." *Id.*  In this regard, the Act was intended

> to promote competition and reduce regulation in order to secure lower
> prices and higher quality services for American telecommunications
> consumers and encourage the rapid deployment of new
> telecommunications technologies.  A major purpose of the 1996 Act was to
> end local telephone monopolies and develop a national
> telecommunications policy that strongly favored local telephone market
> competition.  Toward this end, the 1996 Act imposes, among other things,
> a duty on ILECs (such as [plaintiffs]) to provide interconnection with their

networks and to negotiate in good faith the terms and conditions of the agreements with CLECs (such as [Sprint]). 47 U.S.C. § 251(a)(1), (c)(1) (2006). If the parties cannot agree, either party may petition the state commission charged with regulating intrastate operations of carriers to arbitrate any unresolved issues. [47 U.S.C.] § 252(b)(1).

*Id*. at 94 (citations omitted).  In the instant case, Sprint petitioned defendant PSC to arbitrate various issues, after Sprint and plaintiffs were unable to come to terms on an interconnection agreement.  The PSC eventually resolved those issues in Sprint's favor, which led plaintiffs to commence the subject proceeding.

Before addressing the specific legal issues raised by plaintiffs, it is necessary to discuss Sprint's relationship to another key player in this dispute, Time Warner Communications ("Time Warner").  Essentially, Sprint and Time Warner have entered into an agreement whereby they each provide to the other certain aspects of local telephone service.  Sprint provides certain "telecommunications services," namely: "interconnection to the public switched telephone network (PSTN), number acquisition and administration, submission of local number portability orders to the ILEC, inter-carrier compensation for local and toll traffic, 911 connectivity, operator services, directory assistance and the placement of orders for telephone directory listings." (Joint Record, Ex. 1, p. 6) Time Warner provides the remaining aspects of local telephone service, consisting of "the 'last mile' network over Hybrid Fiber Coaxial [cable], marketing and sales, end user billing and customer service." (Joint Record Ex. D, p. 2) Under this arrangement, Sprint does not have a direct business relationship with the end-user consumers who will be benefitting from Sprint's services, but rather, those consumers deal directly with Time Warner.

Pursuant to its agreement with Time Warner, Sprint was required to obtain all

necessary interconnection agreements, including those at issue here.[1]  That is, Sprint

and Time Warner agreed that Sprint would negotiate and enter into interconnection

agreements on their behalf with ILECs.  Accordingly, Sprint requested that the plaintiff

ILECs enter into such agreements.  Plaintiffs and Sprint negotiated but were unable to

come to terms, in large part because plaintiffs objected to the fact that Sprint did not

have a direct relationship with Time Warner's end-user customers.  As a result, Sprint

petitioned defendant PSC to arbitrate the dispute.

    The parties raised various issues before the PSC, but only three are significant to

the instant action.  First, plaintiffs argued that, under 47 U.S.C. § 251(a), they were not

required to enter into interconnection agreements with Sprint because Sprint was not a

"telecommunications carrier."  Second, plaintiffs asserted that, even if Sprint was a

telecommunications carrier, Sprint was not able to assert rights under 47 U.S.C. §

251(b), since those rights belonged only to Time Warner.  And finally, plaintiffs

maintained that the definition of "local traffic" in the interconnection agreements, which

definition affects reciprocal compensation obligations under 47 U.S.C. § 251(b)(5),

should not include "extended area service" ("EAS") calls, which are inter-exchange calls

billed as local calls, rather than as toll calls.

    With regard to this first issue, in the proceeding before the PSC, plaintiffs

admitted that Sprint would be a "telecommunications carrier" if it was acting as "the

ultimate provider of end user services."  However, they claimed that Sprint was not a

telecommunications carrier when it acted as a mere "'transit provider' for other service

---

[1]"Sprint's business arrangements as a provider of PSTN services requires Sprint to meet all inter-carrier contractual obligations, including obtaining all necessary ICAs." (Joint Record, Ex. D, p. 6)

providers", such as Time Warner. (Joint Record, Ex. B, p. 5)  Plaintiffs argued that when

Congress enacted the Act, it did not "contemplate[ ] that end user service providers

[such as Time Warner] could [use such arrangements as that between Sprint and Time

Warner to] skirt their obligations to request and negotiate competitive interconnection

agreements with the ILEC." (*Id.* at 6)  Rather, plaintiffs stated, the Act requires "a

Telecommunications Carrier [such as Time Warner] that provides end user services to

request . . . interconnection agreements *directly* with the ILEC." (*Id.*) (Emphasis added)

In short, plaintiffs argued that under the Act, they had the right to "deal directly with the

requesting telecommunications carrier [i.e. Time Warner] that intends to serve the end

user for which that carrier and the [plaintiffs] will compete." *Id.* [2]

     In their initial brief before the PSC, plaintiffs argued that Sprint was not a

telecommunications carrier, solely because Sprint had no direct relationship with Time

Warner's end-user customers. (Joint Record, Ex. B)  Plaintiffs did not make any

argument as to whether or not Sprint was a common carrier.  (In that regard, and as will

be discussed further below, it is undisputed that a telecommunications carrier must also

be a common carrier.)  However, in a footnote in their reply brief, plaintiffs raised the

common carrier issue, stating:  "Conspicuously absent from Sprint's Petition and

---

[2]Plaintiffs did not contend that there was anything improper about the contract between Sprint and Time Warner *per se*, but argued that Time Warner was the appropriate party with whom they were entitled to negotiate the interconnection agreement: "Nothing stops the ultimate provider of end user service from utilizing Sprint, but the competitive interconnection is only between the third party (i.e., the ultimate provider of end user service) and the [ILECs].  The only thing stopping that from occurring is Sprint's insistence that, contrary to law, its private 'third party business arrangements' trump the rights and obligations of the [ILECs] to deal directly with the requesting telecommunications carrier that intends to serve the end user for which that carrier and the [ILEC] will compete." (Joint Record, Ex. B, p. 6); *(see also, Id.* at 8)* ("Generally, the Act requires negotiation under the Act by the ultimate providers of end user service and clearly does not require and [ILEC] to accommodate . . . novel 'third party business arrangements.'")

Submission is any demonstration of whether, when Sprint acts as a 'facilitator' for a third

party carrier like [Time Warner], those arrangements will be provided on a common

carrier basis." (Joint Record, Ex. E, p. 2 n. 4)

Following the submission of briefs to the PSC, the parties met with an

Administrative Law Judge ("ALJ") to discuss the issues.  Counsel for the parties

informed the ALJ that they would rely on their briefings, and the ALJ specifically agreed

that the PSC would consider plaintiffs' reply brief as part of the record. (*Id*. at 52)

On May 24, 2005, the PSC issued a decision in which it rejected plaintiffs'

arguments and found, in relevant part, that Sprint was a "telecommunications carrier"

because the services that it provided to Time Warner "[met] the definition of

'telecommunications services." (Joint Record, Ex. K, p. 5) The PSC further stated that

"Sprint's arrangement with Time Warner enables it to provide service directly to the

public," and that "the function that Sprint performs is no different than that performed by

other competitive local exchange carriers with networks that are connected to the

[ILECs]." (*Id.*)  Significantly, in finding that Sprint was a telecommunications carrier, the

PSC did not specifically discuss whether Sprint was a "common carrier," though such a

finding is implicit in the determination that one is a telecommunications carrier under the

Act.  The PSC further found that Sprint was entitled to assert the rights set forth under

47 U.S.C. § 251(b), and that the term ""local traffic" in the interconnection agreements

should include "extended area service" ("EAS") calls.  With regard to the definition of

local traffic, the PSC stated:

> Sprint proposes to use a broad definition of 'local traffic' that includes calls
> between telephone numbers in the same rate center, and calls between
> telephone numbers in different rate centers that have an established local

6

calling area approved by the Commission.  The Independents, on the other hand, support a more restrictive definition of local traffic, limiting local calls to single telephone exchanges, not extending to local calling areas . . . .

\*\*\*

Our regulations and orders (in 16 NYCRR § 602.1 and Cases 00-C-0789 and 01-C-0181) define local exchange service and provide the requirements for the exchange of local traffic.  To comply with our regulations and requirements, the interconnection and the traffic exchange agreements provided by incumbent and competitive local exchange carriers have defined the local service exchange areas and the local calling areas.  Thus, the applicable regulations establish the basis for the definition of local traffic that we are requiring here.  We find that Sprint's definition of local traffic should be used in the interconnection agreements as it conforms best to the stated requirements.

(Joint Record, Ex. K, pp. 7-8)

Plaintiffs moved for reconsideration before the PSC, arguing, in relevant part, that Sprint could not be a telecommunications carrier because it was not a common carrier. (Joint Record, Ex. L, pp. 5-8)  The PSC denied the application, finding that Sprint was a common carrier.[3] (Joint Record, Ex. Q, pp. 5-7)  As to that, the PSC found first that Sprint "indiscriminately offers its services to potential users," meaning that "Sprint will offer the same services it will provide to [Time Warner] to any cable company provider desiring those services." (*Id.* at 6) The PSC further concluded that the services that Sprint provided would "be available to any end user within the specified service territory, albeit through a business relationship with [Time Warner]." (*Id.*)

In moving for reconsideration, plaintiffs also argued, *inter alia*, that the PSC had erroneously included EAS calls within the definition of local service:

[T]he commission has failed to explain how its decision in this proceeding

---

[3]At oral argument before this Court, PSC's counsel stated that this was a decision on the merits which this Court could review, and that PSC only grants motions for reconsideration when it intends to reverse its earlier decision.

7

can be reconciled with its prior decisions in Cases 00-C-0789 and 01-C-0181.  Long-standing Commission decisions in these cases have enunciated that traffic subject to Section 251(b)(5) must both originate and terminate within the certificated service area of an Independent.  Further, EAS, in turn, is a distinct traffic type that the Commission has specifically found is not subject to Section 251(b)(5) because the LECs providing EAS do not compete for the end users making the EAS calls.

(Petition for Rehearing, Joint Record Ex. L, p. 15)(citing 00-C-0789 and 01-C-0181)  The

PSC rejected this argument, and explained its holdings in cases 00-C-0789 and 01-C-

0181, referred to as the "Virtual NXX Case," as follows:

[I]n the Virtual NXX Order, we determined that calls to an NXX code[4] within an established local calling area should be treated as local calls for rating purposes. . . .  These calls were defined as local, but we did not require reciprocal compensation for several reasons.  First, CLECs were not located within the same geographic territory as the Independent telephone companies.  Second, the CLECs did not directly compete with the independent telephone companies for local customers. . . .  In this case, however, [Time Warner] will compete directly with the Independents for local customers and extended area service [EAS] (which classifies telephone traffic that is geographically beyond the defined local service area as local ) that is the equivalent of local exchange service.

(Joint Record, Ex. Q, p. 11)

Plaintiffs commenced the subject action pursuant to § 252(e)(6) of the Act,

seeking review of the PSC's determination.  The parties subsequently filed the subject

motions for summary judgment, and counsel for the parties appeared before the

undersigned for oral argument on September 13, 2006.[5]

ANALYSIS

In an action such as this brought pursuant to § 252(e)(6) of the Act, the Court

---

[4]An NXX code is the first three digits of a seven-digit local phone number, which identifies the specific telephone company central office which serves that number. PSC Decision 00-C-0789 at 1 n.1.

[5]The Court's Law Clerk also held a telephone conference call with counsel on October 5, 2006.

reviews the PSC's rulings on issues of Federal Law *de novo*, and reviews all other

issues, including rulings on issues of state law, using the arbitrary and capricious

standard. *Global Naps, Inc. Verizon New England, Inc.*, 454 F.3d 91, 96 (2d Cir. 2006)

(*citing Southwestern Bell Telephone Co. v. Brooks Fiber Communications of Oklahoma,*

*Inc.*, 235 F.3d 493, 498 (10th Cir. 2000)).  At oral argument, counsel agreed that in

making its review, this Court is limited to the record that was before the PSC.

     *Whether Sprint is a Telecommunications Carrier*

     Plaintiffs contend that Sprint is not a telecommunications carrier for two reasons:

because it is not a "common carrier", and because it does not have a direct relationship

with the end users of its services.

     47 U.S.C. § 153(44) states, in relevant part, that "[t]he term 'telecommunications

carrier' means any provider of telecommunications services."  "Telecommunications

service," on the other hand, is defined as follows: "[T]he offering of telecommunications

for a fee directly to the public, or to such classes of users as to be effectively available

directly to the public, regardless of the facilities used." 47 U.S.C. § 153(46).  In this case,

the parties concede that Sprint does not provide its services "directly to the public."

Therefore, in deciding whether Sprint is a telecommunications carrier, the issue is

whether it offers its services "to such classes of users as to be effectively available

directly to the public."  That issue turns upon whether Sprint offers its

telecommunications services as a "common carrier." *Virgin Islands Telephone Corp. v.*

*FCC* ("*VITELCO*"), 198 F.3d 921, 922, 926 (D.C. Cir. 1999) (Holding that the FCC's

interpretation, that the term "telecommunications carrier" "means essentially the same as

common carrier," was reasonable.); *see also*, *Iowa v. F.C.C.*, 218 F.3d 756, 758 (D.C. Cir. 2000) ("[A] carrier that provides a service on a non-common carrier basis is not a 'telecommunications carrier.'")

To qualify as a common carrier, a telecommunications service provider must satisfy two requirements: 1) first, it must hold itself out to the public, meaning that it must "offer indiscriminate service to whatever public its service may legally and practically be of use"; and 2) second, it must allow its customers to "transmit intelligence of their own design and choosing." *United States Telecom Ass'n v. Federal Communications Comm'n*, 295 F.3d 1326, 1332-33, 1335 (D.C. Cir. 2002); *see also, F.T.C. v. Verity Intern., Ltd.*, 443 F.3d 48, 58 (2d Cir. 2006) ("[T]he definition of a common carrier [has] coalesced into two requirements: (1) the entity holds itself out as undertaking to carry for all people indifferently; and (2) the entity carries its cargo without modification. . . .  This definition does not differ meaningfully for our purposes from the definition of "common carrier" under the Communications Act.") (citations omitted).  Here, it is not disputed that customers would be able to transmit intelligence of their own design and choosing over the facilities provided by Sprint and Time Warner.  Accordingly, the only issue is whether Sprint offers its services indiscriminately "to whatever public its service may legally and practically be of use."

Applying these principles to the instant case, it appears clear, at the outset, that Sprint could qualify as telecommunications carrier even if it did not deal directly with Time Warner's end-user customers.  In *VITELCO*, the Second Circuit  reaffirmed that common carriers "need not serve the whole public," that "common carriers' customers

10

need not be end users and that common carrier services include services offered to other carriers." *VITELCO*, 198 F.3d at 926, 929 (citations and internal quotation marks omitted).  Consequently, the fact that Sprint did not deal directly with Time Warner's customers would not be determinative of whether it was a telecommunications carrier within the meaning of 47 U.S.C. § 251.

However, Sprint must be a common carrier in order to qualify as a telecommunications carrier.  As to that, the Court agrees with plaintiffs that the PSC's finding, that Sprint is a common carrier, is unsupported in the record, insofar as that finding pertains to the services that Sprint provides to other telecommunications companies such as Time Warner.[6]  In finding that Sprint was such a common carrier, the PSC stated that, "Sprint will offer the same service it will provide to [Time Warner] to any cable company provider desiring those services."  That may be true.  However, it is unclear how the PSC made that finding, since there is no support for it in the record.  As to that, the administrative record contains only the following statements concerning Sprint's business: "Sprint has entered into agreements with service providers that intend to compete with ILEC local voice services." (Joint Record, Ex. A, p. 8); "[I]n New York, Sprint has entered into a business arrangement with Time Warner . . . to support its offering of local and long distance voice services." (*Id*., Ex. D, p. 1); "Sprint currently has . . . ICAs [interconnection agreements] with RBOCs and other ILECs in 12 other states."

---

[6]Sprint contends that plaintiffs waived the "common carrier" argument, because it was only raised in plaintiff's motion for reconsideration.  However, as previously mentioned, that is incorrect.  While it was not plaintiffs' main argument before the PSC, and in fact was only raised in a footnote in their reply brief, it is clear that plaintiffs raised the issue prior to PSC's initial ruling. Moreover, even if the argument had only been raised in plaintiffs' motion for reconsideration, PSC nonetheless considered it and issued a decision on the merits of the argument.

(*Id.*, p. 2).  The Court does not believe that these statements establish that Sprint is operating as a common carrier to telecommunications companies such as Time Warner in the specified service territory.[7]

Nonetheless, the Court finds that the PSC's alternate basis for finding that Sprint was a common carrier was correct.  As to that, the PSC stated, in relevant part, that "the services Sprint is providing . . . will be available to any end user within the specified service territory, albeit through the business relationship with [Time Warner]." (Joint Record Ex. Q, p. 6).  Plaintiffs argue that the Court "cannot rely upon [Time Warner's] end users . . . as indicia of Sprint's purported common carrier role," and in that regard, they cite the *VITELCO* case, in which, according to plaintiffs, the court "rejected the use of services provided by the customers of an entity for purposes of determining that entity's status as a 'telecommunications carrier.'"  (Pl. Memo, Petitioner 21)  However, while the Court agrees with plaintiffs' description of the holding in the *VITELCO* case, the Court finds that the *VITELCO* decision is not dispositive here.

The *VITELCO* case involved a situation where AT&T was installing an underwater telecommunications cable between St. Thomas and St. Croix in the Virgin Islands. AT&T intended to sell capacity in the cable to common carriers of telecommunications services.  A competing telecommunications company argued that AT&T should be

_____

[7]PSC mistakenly contends that support for Sprint's common carrier status is found in the Joint Record at Exhibit D, p.2. (PSC Memo at 17-18: "Sprint has entered into the same type of agreement that it has with [Time Warner] with other parties in other service territories in New York.") Actually, the portion of the record cited by PSC merely shows that Sprint has similar contracts *with Time Warner* in those territories. (Joint Record, Ex. D, p. 2: "Sprint provides telecommunications services *to enable [Time Warner] to offer* local exchange and long distance voice services to New York consumers under interconnection agreements ('ICAs') with Frontier, Citizens Communications, AllTel and Verizon.") (emphasis added); (see also, Joint Record, Ex. D, p. 1) (According to Sprint, it has contracted with only one company, Time Warner, with which to provide service in the State of New York).

regulated as a common carrier, arguing that AT&T was "making a service effectively available directly to the public because AT&T's . . . customers will use the capacity to provide a service to the public." *Id.*, 198 F.3d at 924.  In other words, the competitor argued that AT&T should be treated as a common carrier, because its customers were in turn making use of the cable to provide telecommunications services to their customers on a common carrier basis.  However, the court rejected this argument, affirming the FCC's determination that it would be improper to "look to the customer's customers to determine the status of a carrier." *Id.*, 198 F.3d at 926.

However, the Court finds that this aspect of the VITELCO decision is not applicable in the instant case.  That is because, here, Sprint is not merely selling services to Time Warner, which Time Warner will then use to provide services to its customers.  Rather, Sprint and Time Warner are together providing local exchange service to the end users.  As discussed more fully below, neither Sprint nor Time Warner, by themselves, will be providing all of the network components of a competitive local exchange company.  Rather, Time Warner will provide the local loop, and Sprint will provide the end office switch and interconnection trunk. (Joint Record, Ex. Q, p. 5). This is an undisputedly new type of business arrangement, which is unlike the situation presented in *VITELCO*.  In short, the Court finds that it was not erroneous for the PSC to consider the provision of services to "Time Warner's customers" in deciding that Sprint is acting as a common carrier, since, under this new business arrangement, the services being purchased are being provided only through the combined efforts of both companies, even though the end users deal directly only with Time Warner.

13

*Whether CLEC telecommunications carriers need to have direct relationships with end users in order to utilize 47 U.S.C. § §  251(b)(2),(3) & (5) and 47 U.S.C. § 222*

Plaintiffs further contend that PSC erred by holding, pursuant to 47 U.S.C. § 251(b), that they were required to provide number portability, dialing parity, reciprocal compensation, and subscriber list information to Sprint, because Sprint does not have a direct relationship with Time Warner's end-user customers.  Plaintiffs contend that, even if Sprint is found to be a telecommunications carrier within the meaning of § 251(a), plaintiffs are not necessarily required to provide the services listed under § 251(b), since the two sections involve "separate analyses." (Pl. Memo p. 24)  According to plaintiffs, it was Congress' intent, clearly expressed, that the rights under § 251(b) "may be asserted *solely* by the telecommunications carrier/common carrier that is the *ultimate provider of end user services*." (*Id*. at 25) (Emphasis in original).

In that regard, plaintiffs cite two sections of the Act: 47 U.S.C. § 153(26) (definition of Local Exchange Carrier) and 47 U.S.C. § 153(47) (definition of Telephone Exchange Service). (Pl. Memo, p. 25)  Those sections state, in relevant part:

> **Local Exchange Carrier** The term "local exchange carrier" means any person that is engaged in the provision of telephone exchange service or exchange access[8].
>
> ***
>
> **Telephone exchange service** The term "telephone exchange service" means (A) service within a telephone exchange , or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge, or (B) comparable service provided through a

---

[8]The term "exchange access," as used above, means "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services." 47 U.S.C. § 153(16).

14

> system of switches, transmission equipment, or other facilities (or
> combination thereof) by which a subscriber can originate and terminate a
> telecommunications service.

47 U.S.C. § § (26) & (47).  Plaintiffs also cite, *inter alia*, 47 C.F.R. § 51.205, which

states, in relevant part, that LECs "shall provide local . . . dialing parity to competing

providers of telephone exchange service."  In short, plaintiffs contend that even if Sprint

is a telecommunications carrier, it has no rights under § 251(b) because it  does not

provide "exchange service."

The PSC rejected this argument, essentially finding that Sprint and Time Warner

*together* were providing "exchange service" to Time Warner's customers.  As to that, the

PSC set forth Sprint's argument as follows:

> Pointing to the five network components of a competitive local exchange
> company (CLEC) service (the local loop, the end office switch, the
> interconnection trunks, and the incumbent local exchange company (ILEC)
> switch and loop) Sprint states that it will provide end office switching and
> interconnection to end users.  The only difference in the model proposed
> here by Sprint and [Time Warner] is that [Time Warner] will provide the
> CLEC local loop and the telecommunications services will be provided
> under [Time Warner's] name.  End users will be connected to Sprint's end
> office switch using the interconnection trun[k]s that it obtains from the
> ILECs.

(Joint Record, Ex. Q, p. 5).  Ultimately, the PSC concluded that "the reality of the

business arrangement presented here [between Sprint and Time Warner] is that an

alternative network will originate and terminate local traffic." (Joint Record, Ex. Q, p. 7)

The Court finds that PSC's determination was not erroneous.  In that regard, the

Court understands PSC to have held that, in the ordinary case, a CLEC provides three

components of local exchange service: 1) the local loop; 2) the end office switch; and 3)

the interconnection trunks.  However, here, these components are being provided by two

companies working together, as opposed to a single CLEC.  In other words, here there is no single company providing competitive local exchange service, but rather, there are two companies, each providing a portion of the exchange service.  That being the case, the Court agrees that Sprint, acting on behalf of itself and Time Warner, is entitled to request the services listed under § 251(b). The Court has considered all of plaintiffs' arguments on this point and finds that they lack merit.

*Whether PSC correctly determined that the term "local traffic" should include extended area service (EAS) traffic*

The parties do not dispute that, as a matter of federal law, state commissions such as the PSC have the authority to define local calling areas. *See, Global Naps, Inc. v. Verizon New England, Inc.*, 454 F.3d at 97 ("[T]he FCC clearly indicated that it intended to leave authority over defining local calling areas where it always had been - squarely within the jurisdiction of the state commissions.") However, plaintiffs contend that the PSC's decision to include EAS calls within the definition of local traffic was arbitrary and capricious.  As to that, plaintiffs state, *inter alia*, that the PSC's *Virtual NXX* decision stands for the proposition that "the Act's Section 251(b)(5) reciprocal compensation structure did not apply to the provision of EAS between an Independent and a CLEC," and that the PSC's determination in the instant case represents an arbitrary and capricious "mid-stream departure":

> The only finding upon which the NY PSC based its mid-stream departure from its prior decisions regarding intercarrier treatment of EAS traffic is . . . [that Time Warner] will compete directly with the Independents for local customers and extended area service . . . .  Since the Independents do not 'compete directly' for end users in an adjacent EAS exchange, the NY PSC's justification for its mid-stream change in the treatment of EAS by the Independents is without basis.

16

(Pl. Memo of Law, p. 34)

The Court disagrees with plaintiffs' arguments on this point, and finds that the

PSC's determination was not arbitrary or capricious.  As to that, the Court notes, at the

outset, that the *Virtual NXX* case did not involve an interconnection agreement under 47

U.S.C. § 251.  Rather, it is clear that no such agreement existed between the carriers

involved in that matter.  Nor were the carriers in the *Virtual NXX* case competing to

provide local exchange access service.  The issue in that case was how to treat calls, for

rating purposes, made to telephone numbers assigned by a CLEC to internet service

providers ("ISPs"), where the ISPs were assigned NXX codes within an Independent's

local calling area, even though the CLEC and ISPs were physically located outside the

calling area.  The PSC ruled that such calls should be treated as local for rating

purposes, since the NXX code corresponded to the local calling area.  The PSC then

addressed the issue of inter-carrier compensation, and found that the Independent and

the CLEC should handle the calls on a "bill and keep" basis.[9]  As to that, the PSC

determined that "bill and keep", and not reciprocal compensation, the method provided

for in 52 U.S.C. § 251(b)(5), was the appropriate means of intercarrier compensation:

"[S]ince the CLEC is not located within the same geographic territory as the independent

and is not directly competing with the Independent for local customers, treatment of the

call as local for the purpose of reciprocal compensation does not appear warranted."

(00-C-0789 at 8)  However, the PSC further stated, in its subsequent clarifying decision,

that, "if a different arrangement is presented as a result of the interconnection

---

[9]"'Bill and keep' is a compensation method whereby each carrier is responsible for its own costs
and recovers those costs from its end users."  PSC Decision 00-C-0789 at 8 n. 9

arrangement process, the Commission may consider the appropriateness of bill-and-keep for that situation." (00-C-0789, 01-C-0181 at 10)

This Court interprets the discussion in the *Virtual NXX* case concerning the lack of competition as merely reflecting the idea that there, the ILEC and the CLEC were not competing to provide local exchange service.  Therefore, the *Virtual NXX* case did not involve a situation where 47 U.S.C. § 251 was applicable, and consequently, it would have been inappropriate for the PSC to direct the payment of reciprocal compensation under 42 U.S.C. § 251(b)(5).  The instant case is clearly distinguishable, since here, plaintiffs and Sprint are competitors for local exchange service and, as such, are entering into interconnection agreements under 47 U.S.C. § 251.  Plaintiffs focus on the fact that they and Sprint are not technically competing for customers in EAS areas, since ILECs can only operate within the geographic confines of their certificated area, and EAS calls either originate or terminate outside of that area.  In other words, an ILEC cannot provide service or compete for service in an EAS area, since the EAS area is part of a neighboring exchange.  However, the Court finds that plaintiffs are attempting to construe the *Virtual NXX* decision in an overly-narrow manner.  The determinative factor is that plaintiffs and Sprint are competing for customers within each plaintiff's certificated area.  Moreover, as discussed above, the PSC indicated that it might reconsider the appropriateness of using reciprocal compensation if a "different arrangement" was presented as a result of interconnection under 47 U.S.C. § 251, which is exactly the situation presented here.  Consequently, the Court finds that PSC's determination to include EAS within the definition of "local traffic" was neither arbitrary nor capricious.

18

CONCLUSION

Plaintiffs' motion for summary judgment [#25] is denied, defendants' cross-

motions for summary judgment [#30][#33] are granted, and this action is dismissed.

SO ORDERED.

Dated: Rochester, New York
      October 27, 2006

ENTER:


/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge